UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE TOWN OF RAMOPO, NEW YORK; ELLEN STACK; SEAN STACK; PATRICIA HENDRICK; DAN DALY; and MENDEL TAUB,

         Plaintiffs,

-against-

THE TOWN OF CLARKSTOWN by its Town Board; and JOHN DOES "1-5",

         Defendants.

---

No. 16 Civ. 2004 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

  Plaintiffs the Town of Ramopo, New York ("Ramopo"), Ellen Stack, Sean Stack, Patricia Hendrick, Dan Daly, and Mendel Taub (collectively "Plaintiffs") initiate this action pursuant to 42 U.S.C. §§ 1981, 1982, 1983, and 1985(3), the Fair Housing Act, 42 U.S.C. § 3604(a) and § 3617 ("FHA"), the First and Fourteenth Amendments to the United States Constitution, New York Civil Rights Law § 40–c ("NYCRL"), Section 291 of the New York State Human Rights Law, N.Y. Exec. Law § 291(2) ("NYSHRL"), and the New York State Constitution, against the Town of Clarkstown ("Clarkstown") and John Does 1-5 (collectively "Defendants"), alleging claims of interference with Plaintiff's federal right to interstate and intrastate travel, right to association, right to equal protection of the laws, right to assemble, and claims of religious discrimination and retaliation against Plaintiffs in the housing context. Defendants have moved to dismiss the complaint pursuant to either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) on various grounds, including that the action is procedurally barred by res judicata or that the causes of action alleged in the complaint are time-barred by the applicable statutes of limitations. For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

1

**FACTUAL BACKGROUND**

The following facts are derived from the Amended Complaint unless otherwise noted, and are accepted as true for purposes of this motion.

Since 1940, Ramopo has experienced greater population growth than Clarkstown. (*Id*. ¶¶ 34-40.) Within Ramopo, there is also a growing population of individuals practicing the Jewish faith, and a substantial increase in the population of Orthodox and Hasidic Jewish individuals, as compared with a relatively smaller growth of this subpopulation within Clarkstown. (*Id*. ¶ 41, 42.) In addition to a substantially more religiously diverse population, a larger population of more economically disadvantaged individuals also reside in Ramopo as compared to Clarkstown. (*Id*. ¶ 44.) Ramopo also differs from Clarkstown in that it has a larger number of areas where low income residents reside, and villages consisting almost entirely of Hasidic families. (*Id*. ¶ 46.)

Defendants have undertaken numerous activities to prevent Orthodox and Hasidic Jewish individuals from moving from Ramopo to Clarkstown. (*Id*. ¶ 47.) Plaintiff alleges that these measures include the closing of Samuel Road, which connects Ramopo and Clarkstown. (*Id*. ¶ 49.) Plaintiff contends that a physical barricade was placed along the area where Samuel Road intersects Ramopo and Clarkstown, under the pretext that the closure was meant to address a concern that cars were exceeding the speeding limit. (*Id*. ¶ 50.) Clarkstown and other Defendants did not undertake road safety practices or provide for traffic enforcement activities before placing the barrier on Samuel Road. (*Id*. ¶ 51, 52.) The initial barrier was primarily composed of "plastic with a break-away chain locking device" which allowed for the passage of emergency vehicles. (*Id*. ¶55.) Later, the plastic barricades were replaced with cement "jersey barrier" barricades, which allowed for the passage of emergency vehicles from Clarkstown to Ramopo with delay

caused by the need to remove the barrier.  (*Id*. ¶ 56.)

Defendants have also taken other measures to prevent Jewish individuals from traveling to or residing in Clarkstown, including by appearing at town meetings held in Ramopo, and objecting to the development of a multi-family residential facility on the border of Clarkstown, which would provide "affordable and less affluent housing that would attract Orthodox and Hasidic residents." (*Id*. ¶¶ 73, 74.)  Clarkstown also passed a moratorium on new construction after the closure of Samuel Road.  (*Id*. ¶ 75.)  In his November 2015 campaign for re-election as Town of Clarkstown Supervisor, the former Clarkstown Supervisor also emphasized that he was "keeping Clarkstown from Becoming Another Ramopo."  (*Id*. ¶ 78.)  This slogan was placed in a brochure that publicized that Clarkstown had updated the Town Code and placed a moratorium on new residential construction.  (*Id*. ¶ 79.)  This literature also depicted a "multi-family housing unit with many children's toys and playground devices … intended to show areas typically found within … Ramopo where Hasidic families ….[live]."  (*Id*. ¶ 80.)

All of these efforts were part of a discriminatory purpose confirmed by the installation of the "permanent" barrier in 2016.  (*Id*. ¶ 81.)

Plaintiffs Ellen Stack, Sean Stack, Patrick Hendrick, and Dan Daly live on Samuel Road, which is located within Ramopo.  (Compl. ¶ 25.)  Samuel Road traverses both Ramopo and Clarkstown, and previously provided for public travel.  (Id. ¶¶ 26, 27.)  Ramopo borders the state of New Jersey, and Samuel Road previously served as a means for individual Plaintiffs to travel both intra-New York State within the Towns of Ramopo and Clarkstown, and interstate between New York and New Jersey.  (Id. ¶¶ 28, 29.)  Public access to Samuel Road also allowed for more expeditious access for emergency and other vehicles.  (See id. ¶ 32.)

The County of Rockland and the Village of Chestnut Ridge previously brought litigation

to remove the barrier.  (*Id*. ¶ 57.)   Throughout that litigation, Clarkstown and other Defendants asserted that the barrier provided for access by emergency vehicles that could enter Ramopo through Samuel Road by using a key to open a lock that kept the barrier closed.  (*Id*. ¶¶ 58, 59.) After all New York State Court remedies were exhausted "for those wishing to remove the Barrier on Samuel Road," on March 11, 2016, Defendants placed permanent, new concrete barriers across Samuel Road, affixed to the road with metal stakes so that no emergency vehicles could traverse that portion of the road.  (*Id*. ¶ 61.)  At that time, a representative of the Defendants told Plaintiff Stack that they were making the closure of Samuel Road "permanent" because no more judicial remedies existed for those who oppose the barrier.  (*Id*. ¶ 62.)

   The closure of Samuel Road has also had a direct impact upon the general health, safety, and welfare of Ramopo residents on and about Samuel Road; on one occasion, in 2013, an ambulance was unable to pass through Samuel Road to Ramopo due to the barrier and had to re-route, causing a delay in medical assistance to a Ramopo resident who had suffered a stroke.  (*Id*. ¶¶ 64, 65.)  Prior to the installation of the cement barriers, during the winter months a "pile up" of snow and ice prevented emergency vehicles from passing through the barrier, even if it were open. (*Id*. ¶ 66.)  The barrier has also created a virtual dead end on Samuel Road, and has become a location where drugs can be used and sold, "since it is difficult for law enforcement to view such conduct."  (*Id*. ¶68.)  With the closing of Samuel Road, Ramopo residents must also use an alternate route to enter a specific Clarkstown road called Newport Drive; the alternate route has a steep incline that is difficult to drive on during inclement weather.  (*Id*. ¶¶ 69, 70.)

   Ambulance access to Ramopo through Samuel Road provides for the quickest response time.  (*Id*. ¶ 71.)  Due to the barrier, an ambulance that intends to traverse Samuel Road must reroute and take a longer route, which increases response time to Ramopo residents.  (*Id*. ¶ 72.)

**STANDARD ON A MOTION TO DISMISS**

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) (*quoting Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id*. at 662. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

**DISCUSSION**

**I.   Timeliness of Plaintiffs' Federal Claims**

"'While a statute-of-limitations defense may be raised in a motion to dismiss under [Rule] 12(b)(6), such a motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Ortiz v. Cornetta*,

867 F.2d 146, 148 (2d Cir. 1989) (citation omitted).  A defendant may raise a pre-answer statute of limitations defense, for example, "[w]here the dates in a complaint show that an action is barred by a statute of limitations."  *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).  Thus, for a Court to grant a motion to dismiss on the basis that the asserted claims are time-barred, there must be no factual question as to whether the alleged violations occurred within the statutory period.  *See Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 51 F. Supp. 2d 457, 468 (S.D.N.Y. 1999).

      a.  Applicable Statutes of Limitations

Plaintiffs bring federal constitutional claims pursuant to §§ 1981, 1982, 1983 and 1985(3), and the FHA.  Plaintiff's claims brought pursuant to §§ 1981,[1] 1982, 1983 and 1985(3) are governed by a three-year statute of limitations, and their FHA claims are governed by a two-year limitations period.  *See Carvel v. Franchise Stores Realty Corp.*, 08-CV-8938 (JGK), 2009 WL 4333652, at *8 (S.D.N.Y. Dec. 1, 2009) ("the statute of limitations in New York for claims pursuant to 42 U.S.C. §§ 1981–83 & 1985 is three years"); *see also See Clement v. United Homes, LLC*, 914 F. Supp. 2d 362, 370 (E.D.N.Y. 2012) (citing 42 U.S.C. § 3613(a)(1)(A); *Adams v. Han*, 478 Fed. Appx. 686, 687–88 (2d Cir.2012)) ("to bring claims under … the Fair Housing Act '[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice.'").  Since Plaintiffs commenced this action on March 17, 2016, their federal claims are time barred unless: (1) their claims under §§ 1981, 1982, 1983 and 1985(3) accrued after March 16, 2013, and their FHA claims accrued after March 16, 2014 or (2) the statute

---

[1] The applicable statute of limitations for § 1981 claims is dependent upon whether Plaintiff states a claim under the statute as it was originally passed, or under its 1991 Amendments. *Wright v. City of Ithaca*, 633 F. App'x 63, 64 (2d Cir. 2016) (summary order).  Although not clear from the Complaint, because Plaintiffs' §1981 claim appears to fall within the original language of the statute, a three-year limitations period applies. *Id.*

of limitations was tolled.

      b. Application of Statutes of Limitations to Plaintiffs' Claims

Defendants argue that a traffic barrier preventing the unimpeded movement of traffic has been in place since late 2012, that all of Plaintiffs' federal claims are predicated upon this fact, and that they are thus time barred. (*See* Defs.' Mem. of Law In Support of Mot. to Dismiss, at 8-9, [hereinafter "Defs.' Mem."], ECF No. 18.) Plaintiffs contend that the harms alleged in the Complaint arise from the "permanent" closure of Samuel Road which occurred in March 2016. (*See* Pls.' Mem. in Opp. to Defs.' Mot. to Dismiss, at 15-17, [hereinafter "Pls.' Opp."], ECF No. 20.)

Although the parties dispute the meaning of a "permanent" closure as compared to a "temporary" one, Plaintiffs concede that Samuel Road has been blocked by some form of barrier that has, at the very least, prevented the passage of public vehicular traffic since 2012, though emergency vehicles were permitted to pass. (*See* Pls.' Opp., at 2) ("Defendants' own Motion documents confirm that in 2012 only a 'breakaway barrier' was put across Samuel Road …. That 'breakaway barrier' *allowed emergency vehicles to enter and exit Samuel Road by using a 'key'* to open the 'gate' across Samuel Road.") (emphasis added); (*id.*) (*citing* George Hoehmann Declaration In Support of Defs.' Mot. to Dismiss, Ex. B, ¶ 27) (indicating in August 2012, a temporary barrier was replaced with *a double-gate with chain and padlock for key distribution to emergency services, but "nevertheless" residents and general public were prohibited from traveling along Samuel Road*) (emphasis added); (*id.*) ("[P]revious litigation did not concern the fact of a 'permanent barrier' blocking Samuel *Road preventing the passage of emergency vehicles and pedestrians, as is set forth in this Federal Court Litigation*") (emphasis added); (*id.*, at 5) (noting prior litigation involved action taken by Defendant Clarkstown in late 2012 pertaining to

7

the replacement of a temporary barrier with a breakaway barrier that *could be opened with keys by emergency service providers*) (emphasis added); (*see also id.*) ("It is *the current inability of emergency vehicles to cross Samuel Road* to and from Ramopo to Clarkstown (and vice versa) that is an essential part of Plaintiffs' Complaint.") (emphasis added). Thus, based upon Plaintiffs' own Memorandum, and the way in which it illuminates the factual allegations alleged in Plaintiffs' Complaint, any injuries arising out of the existence of a barrier across Samuel Road impeding public traffic began to accrue in 2012.

> i. Accrual

Generally, a cause of action for a discrimination claim accrues "'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 F. App'x 672, 674 (2d Cir. 2009) (citing *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)); *see Washington v. Cty. of Rockland*, 373 F.3d 310, 319 (2d Cir. 2004) (Sotomayor, J.) (noting, in considering claims under § 1981 and § 1983, that "[a]s with all discrimination claims, plaintiffs' claims accrued when they knew or should have known of the discriminatory action"); *Clement v. United Homes, LLC*, 914 F. Supp. 2d 362, 371–72 (E.D.N.Y. 2012) (quoting *Dombrowski v. City of New York*, 116 F.3d 465, at *1 (2d Cir. 1997) ("Claims under the FHA, as well as under §§ 1981, 1982 and 1985, are subject to the discovery rule and thus accrue when a 'plaintiff knows or has reason to know of the injury that serves as the basis for the action.'"). Discovery of the injury and its cause "'require[] only knowledge of, or knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it.... [A] plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim. Rather, a claim will accrue when the plaintiff knows, or should know, enough of the critical

facts of injury and causation to protect himself by seeking legal advice.'" *Id*. (citing *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 533 (2d Cir. 1999)).

As Defendants correctly point out, though Plaintiffs argue that their claims arise out of alterations made in 2016, preventing the passage of emergency vehicles, many of the factual allegations they allege in support of their claims do appear to pertain solely and specifically to the installation of the initial barrier impeding public traffic, which occurred in 2012. (*See, e.g.*, Compl. ¶¶ 33, 48-49, 68, 69.)  In response, Plaintiffs argue in a footnote that the continuing violation doctrine and equitable tolling should apply to toll the limitations periods for those claims relating to the initial installation of the barrier on Samuel Road. (*See* Pl's. Opp., at 17 n.9.)

To the extent that Plaintiffs' claims are based not just on an isolated event, but on an alleged ongoing policy of discrimination, the statute of limitations can be extended under the "continuing violation" theory which "allows a plaintiff in certain circumstances to recover on the basis of an ongoing policy or practice of illegal activity initiated prior to the limitations period." *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 118 (2d Cir. 1997). Where Plaintiff alleges a continuing violation that gives rise to a claim of a discriminatory policy, the statute of limitations period begins to run at the end of the "last asserted occurrence." *Clement*, 914 F. Supp. 2d. at 373 (citing *Havens Realty Corp v. Coleman.*, 455 U.S. 363, 363 (1982)).

However, the continuing-violation doctrine is generally disfavored in this Circuit. *In re Johnson*, No. 09-49420, 2014 WL 4197001, at *13 (Bankr. E.D.N.Y. Aug. 22, 2014) (citing *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 292 (S.D.N.Y. 2011)) ("Courts in the Second Circuit and elsewhere 'have been loath to apply the continuing violation doctrine absent a showing of compelling circumstances'") (internal citations and quotation marks omitted).  Furthermore, "[c]haracterizing defendants' separate wrongful acts as having been committed in furtherance of

a conspiracy or as a 'series of interlocking events' does not postpone accrual of claims based on individual wrongful acts." *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980) *overruled on other grounds by Roesch v. Otarola*, 980 F.2d 850, 853–54 (2d Cir. 1992), *as recognized in Beberaggi v. N.Y.C. Transit Auth.*, No. 93–CV–1737, 1994 WL 75144, at *5 (S.D.N.Y. Mar. 9, 1994); *see Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) (noting that "when a plaintiff knows or ought to know of a wrong, the statute of limitations on that claim starts to run, and the later awareness that the actionable wrong was also part of a conspiracy does not expand the statutory time limit"). Nor can a "continuing violation … be established merely because the claimant continues to feel the effects of a time-barred discriminatory act." *Harris v. City of New York,* 186 F.3d 243, 250 (2d Cir. 1999).

As they pertain to the general public, this Court finds that Plaintiffs' first, second, and fourth claims for relief alleging that Defendants interfered with Plaintiffs' federal right to interstate travel, right to intrastate travel, and right to freedom of association,[2] respectively, are all *effects* of the initial installation of a barrier on Samuel Road, a separate and discrete act that prevented one form of public access to Clarkstown. Because Plaintiff became aware of the injury underlying these claims when the initial barrier blocking the passage of public traffic was installed,[3] these claims began to accrue at that time and are therefore barred by the aforementioned statute of limitations, and dismissed with prejudice.[4] To the extent that Plaintiffs' sixth claim, alleging that

---

[2] This claim is dismissed as time-barred to the extent it is premised upon the installation of a barrier blocking public vehicular traffic across Samuel Road. The Court notes that Plaintiffs allege Defendants intruded upon Plaintiffs' "right to associate with others for purposes of protected activity" without alleging factual content to this effect. (*See* Compl. ¶ 98.) This bare, conclusory assertion of a violation is insufficient in any event and must therefore be dismissed, without prejudice, to the extent it relates to other allegations in the Complaint.

[3] Plaintiff does not allege that Samuel Road is the only form of access to the Town of Clarkstown from the Town of Ramopo. Even if that were the case, the impediment began in 2012.

[4] Nor does equitable tolling apply, given Defendants' conduct did not conceal Plaintiffs' causes of action with regard to these injuries. *See, e.g.*, *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1158 (2d Cir. 1995) (denying equitable tolling on the basis plaintiff submitted evidence of conspiracy, but not of defendants tangible steps to conceal the nature of activities); *Pietri v. N.Y.S. Office of Court Admin.*, 936 F. Supp. 2d 120, 138 (E.D.N.Y. 2013) ("To avoid

Defendants violated Plaintiffs' rights under the FHA by making housing "otherwise unavailable because of religion," is based upon the existence of the barrier to public vehicular traffic on Samuel Road, this claim is also dismissed as time-barred for the aforementioned reason,[5] and Plaintiffs' seventh claim, a related FHA claim, is dismissed on the same grounds.  To the extent that these FHA claims arise out of timely factual allegations asserted within the Complaint (*see, e.g.*, ¶¶ 78-81 (citing discriminatory acts against individuals of Jewish faith), these claims may remain. Finally, as to Plaintiffs' third claim for relief, which merely asserts that Defendants have violated a variety of Plaintiffs' federal rights, to the extent it is premised upon the existence of a barrier to the motoring public across Samuel Road, these claims are also dismissed as time-barred.  *See Singleton*, 632 F.2d at 192-93 ("To permit [plaintiffs] to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims…The existence of a conspiracy does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs. It is the wrongful act, not the conspiracy, which is actionable").

In contrast, claims such as those premised upon the delay in emergency response for Plaintiffs on the Ramopo side of the barrier on Samuel Road may remain.

## II. Res Judicata and Collateral Estoppel

Defendants argue that Plaintiffs' claims are also barred by the doctrines of collateral estoppel and res judicata because they are based on the original installation of a traffic barrier

---

dismissal on the grounds of equitable tolling due to Defendants' misconduct, Plaintiff must set forth in his Amended Complaint facts from which the Court could conclude that he was unaware of his cause of action *because of* Defendants misleading conduct.")  Indeed, Plaintiff has been aware of the blockage since 2012.

[5] In support of their sixth claim for relief Plaintiffs state "Defendants installation of a Traffic Barrier and other actions complained of herein have had the effect … of excluding said Plaintiffs from public roads and other areas within the Town of Clarkstown by discriminating against the said Plaintiffs based on religion." (Compl. ¶ 107.)

11

across Samuel Road, which was previously fully litigated and adjudicated on the merits. (*See* Defs.' Mem., at 11.) Specifically, Defendants argue that the issue concerning Clarkstown's right to install and maintain the barrier was litigated by the County and Village of Chestnut Ridge, parties in privity with Plaintiffs, that both the New York State Supreme Court and Appellate Division ruled in Clarkstown's favor, and that Plaintiffs' claims arise out of the same set of facts as those in the previous litigation. (*See* Defs.' Mem. at 11, 15.)

In accordance with the doctrine of res judicata, and pursuant to the Constitution's Full Faith and Credit Clause, "federal courts must accord state court judgments the same preclusive effect as other courts within that state." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Because the prior judgments in question here were issued by New York State Courts, the Court's analysis is governed by New York State law, "which has adopted a transactional approach to res judicata, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Id*. However, new claims arising subsequent to a prior action are not barred by res judicata, whether or not they are premised upon facts stemming from the same "course of conduct." *Storey v. Cello Holdings, L.L.C*., 347 F.3d 370, 383 (2d Cir. 2003).

Given Plaintiffs' remaining claims stem from a different "transaction," namely the alteration to the barrier preventing the passage of emergency vehicles, a change that occurred years after the initial installation of the barrier and subsequent to the initiation of prior litigation, these claims could not have been raised in the prior action and are not barred by the doctrine of res judicata. *See Maharaj v. Bankamerica Corp*., 128 F.3d 94, 97 (2d Cir. 1997) ("as a matter of logic, when the second action concerns a transaction occurring after the commencement of the prior litigation, claim preclusion generally does not come into play"). The Court does not consider the

res judicata effect on time-barred claims discussed above.

Under the doctrine of collateral estoppel, a party may not relitigate an issue that was "*clearly raised* in a prior action or proceeding and decided against that party ..., whether or not the tribunals or causes of action are the same." *Leather v. Eyck*, 180 F.3d 420, 425 (2d Cir. 1999) (internal quotation marks and citations ommitted). For the doctrine to apply, the issues raised in the second action must be identical, or substantially similar. *Zherka v. City of N.Y.*, 459 F. App'x 10, 13 (2d Cir. 2012). As to claims not dismissed pursuant to this Order, the Court finds the issues raised, which pertain to the installation of the new barrier in 2016 and discriminatory acts by Defendants, are distinct from those raised in the state court actions.

On this basis, Plaintiffs remaining claims are not barred by the doctrines of res judicata or collateral estoppel.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's claims are resolved as follows.

The following claims are DISMISSED with prejudice to the extent they are premised upon the imposition of a barrier blocking the passage of public traffic across Samuel Road:

- Claim for interference with federal right to intrastate travel and interstate travel;
- Claims arising under 42 U.S.C. §§ 1981, 1982, 1983 and 1985(3)[6];
- Fair Housing Act Claims;
- Claim based on First Amendment right to freedom of association.

Additionally, First Amendment freedom of association claims based on alternate theories are

---

[6] As Defendants argument regarding the sufficiency of Plaintiffs' §§ 1983, 1985 and other claims are all premised upon the erection of the initial barrier in 2012, and claims premised upon the initial installation of the barrier have been dismissed as time-barred, these arguments are deemed moot. (*See, e.g.*, Defs.' Mem., at 17-20.) Defendants do not address Plaintiffs' state law claims.

dismissed without prejudice.

Plaintiff shall have until March 28, 2017 to amend the Complaint as to those claims that are dismissed without prejudice. Plaintiffs shall ensure that they allege sufficient factual content to support their remaining claims, and conform with this Opinion for clarity. If Plaintiff elects to file an amended complaint, Defendants shall have until April 28, 2017 to move or file responsive pleadings. If Plaintiff does not file an amended complaint, Defendants shall have until sixty days from the date of this Order to file responsive pleadings. An initial case management and scheduling conference pursuant to Fed.R.Civ.P. 16 is scheduled for April 27, 2017 at 10:30 a.m., at the United States Courthouse, 300 Quarropas Street, Courtroom 218, White Plains, New York 10601. The parties shall confer in accordance with Fed.R.Civ.P. 26(f) at least 21 days prior to the conference and attempt in good faith to agree upon a proposed discovery plan that will ensure trial readiness within six months of the conference date. The parties shall also complete a Civil Case Discovery Plan and Scheduling Order and bring it to the conference. The Court respectfully directs the Clerk to terminate the motion at ECF No. 16.

Dated: February 27, 2017  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge